IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DUANE ERIK FREEMAN, SR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 11-304-GMS |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM

### I. INTRODUCTION

The plaintiff Duane Erik Freeman, Sr. ("Freeman") brought this action under 42 U.S.C. § 405(g), seeking review of a final decision by the defendant Michael J. Astrue, Commissioner of Social Security ("the Commissioner"),[1] denying Freeman's request for a waiver of overpayment recovery. (D.I. 7 at 17–18.) Freeman applied for disability insurance benefits ("DIB") on February 15, 1993. (*Id.* at 14.) The Social Security Administration ("SSA") granted his application on February 8, 1995, at which point he began receiving and cashing monthly DIB checks. (*Id.*) In March 2002, Freeman resumed full-time employment and notified SSA as much. (*Id.* at 14, 148.) Despite his resumed work activity, Freeman continued to receive and cash DIB checks. (*Id.*) On December 18, 2006, SSA informed Freeman that, due to his resumed work activity and earnings, he had been overpaid and was obligated to refund the overpayment. (*Id.* at 161–64.) Freeman

---

[1] Carolyn W. Colvin became the acting Commissioner of Social Security on February 13, 2013, after briefing began. Although Carolyn W. Colvin should be substituted for Michael J. Astrue under Federal Rule of Civil Procedure 25, pursuant to 42 U.S.C. § 405(g), no further actions are necessary to proceed with this action.

requested a waiver of overpayment recovery, asserting that he was not at fault for the mistake and could not afford to repay SSA. (*Id.* at 75–82.) SSA denied the request. (*Id.* at 87.)

On March 11, 2010, the matter was heard before an administrative law judge ("ALJ"). (*Id.* at 95, 165-94). In a decision dated April 12, 2010, ALJ Judith Showalter denied Freeman's requested waiver of overpayment recovery. (*Id.* at 11–18). On February 10, 2011, the Social Security Appeals Council also denied Freeman's request to have the matter reviewed. (*Id.* at 4–8). Freeman then filed this action on April 11, 2011. (D.I. 2, 3.) Presently before the court are the parties' cross-motions for summary judgment. (D.I. 13, 14.) For the reasons that follow, the court will: (1) deny Freeman's motion for summary judgment, and (2) grant the Commissioner's motion for summary judgment.

## II. BACKGROUND

Freeman began working as a city carrier for the United States Postal Service ("USPS") in 1990. (D.I. 7 at 145, 148.) During his first year of employment, Freeman suffered a disability that rendered him unable to work full-time. (*Id.* at 14.) In the wake of his disability, he received worker's compensation benefits. (*Id.*) On February 15, 1993, Freeman protectively filed an application for DIB, alleging disability as of October 18, 1990. (*Id.*) SSA approved Freeman's application on February 8, 1995, finding that he was indeed disabled as of his alleged onset date and eligible for DIB payments as of February 1992. (*Id.*) SSA sent Freeman a notice of award letter dated March 14, 1995, which included a pamphlet entitled "When You Get Social Security Disability Benefits....What You Need To Know." (*Id.* at 17.) The pamphlet explained SSA's reporting requirements in the event of resumption of work or improved health. (*Id.*) Shortly thereafter, Freeman received a lump-sum payment for retroactive benefits. (*Id.* at 14.) He also began receiving monthly DIB checks moving forward. (*Id.*)

2

SSA subsequently notified Freeman that his initial lump-sum payment was too high, due to his having received worker's compensation benefits. (*Id.*) An ALJ decision on February 2, 2000, however, determined that Freeman was not at fault and waived the overpayment recovery. (*Id.* at 14, 20, 76.) Freeman continued to receive and cash monthly benefit. (*Id.* at 14).

In March 2002, Freeman resumed full-time employment as a city carrier for USPS, earning a wage of $21.00 per hour. (*Id.* at 147–156.) He reported earnings of $1865.27 in March 2002 and $1521.96 in April 2002. (*Id.* at 149.) Freeman promptly reported his changed work status to SSA in March and April 2002, first by telephone and then by completing and returning a Work Activity Report. (D.I. 13, Ex. 1 at 1–8.) SSA acknowledged Freeman's return to work in a subsequent notice dated February 5, 2003, which included a pamphlet entitled "Working While Disabled...How Social Security Can Help," and a request that he complete additional Work Activity Reports. (D.I. 13, Ex. 2 at 1.) Although SSA acknowledged his resumption of work, Freeman continued to receive monthly DIB for a period of more than four years after March 2002. (D.I. 7 at 14, 137–45.) According to SSA claims representative Rebecca Calloway, the mistaken payments were likely the result of a clerical error in recording Freeman's Work Activity Reports. (*Id.* at 192.)

Throughout this period from 2002 to 2006, Freeman repeatedly notified SSA of his renewed employment. (*Id.* at 115–36, 147–156.) Specifically, Freeman submitted Work Activity Reports in April 2002, February 2003, November 2005, and November 2006. (*Id.*) These Work Activity Reports indicated that, from March 2003 to December 2005, Freeman earned a minimum of $3395.65 per month and had no special needs pertaining to his employment performance. (*Id.* at 115–20.) On several occasions, due to increases in Freeman's monthly earnings, SSA increased

3

Freeman's DIB award amount and sent him Notices of Change in Benefits letters. (*Id.* at 137-44.) Freeman continued to receive and cash DIB checks. (*Id.* at 176-77.)

On December 18, 2006, SSA sent a letter to Freeman informing him that, from March 2003 through November 2006, he had been overpaid disability benefits after resuming full-time employment. (*Id.* at 14, 161–64.) The letter explained that Freeman had mistakenly continued to receive benefits and had thus been paid an excess of $70,499.00. (*Id.*) On January 16, 2007, Freeman requested a waiver of overpayment recovery, arguing that the overpayment was not his fault and that he could not afford to repay the money. (*Id.* at 19–26.) He also submitted documentation indicating his household expenses. (*Id.* at 27–51.) On March 5, 2007, SSA acknowledged receipt of Freeman's waiver request and asked for additional documentation of Freeman's household expenses. (*Id.* at 52.) Freeman submitted additional documentation. (*Id.* at 53–72.) In June 2007, SSA determined that Freeman had sufficient monthly household income—which, including his wife's income, exceeded $5000—to refund the overpayment. (*Id.* at 14, 73–74.)

In March 2008, Freeman submitted a second request for a waiver of overpayment recovery, again maintaining that SSA's overpayment was not his fault, that he was financially unable to pay the money, and that it was unfair. (*Id.* at 75–82.) After receiving the request, SSA determined that Freeman could afford to repay $216 per month. (*Id.* at 84–85.) SSA then sent Freeman a letter informing him that his waiver request was not approved and scheduling a personal conference to determine whether he would be compelled to refund the overpayment. (*Id.* at 87.)

Freeman met with an SSA claims representative on December 18, 2008. (*Id.* at 88.) He reiterated his contention that he was not at fault for the overpayment because he had promptly and continuously informed SSA of his resumed work activity. (*Id.*) The claims representative advised

4

Freeman that he should have returned the checks. (*Id.*) Freeman advised the claims representative that he wanted a hearing before an ALJ and did not wish to make payment arrangements at that time. (*Id.*) Upon conclusion of the personal conference, the claims representative completed a Waiver Determination form indicating that Freeman was at fault for the overpayment and that Freeman had sufficient means to pay back the benefits. (*Id.* at 90–91.) SSA then sent a notification to Freeman officially denying his request for a waiver. (*Id.* at 92–94.)

On February 3, 2009, Freeman sent SSA a timely request for a hearing before an ALJ. (*Id.* at 95.) SSA acknowledged receipt of the request in a letter dated August 4, 2009, and advised Freeman of his right to representation. (*Id.* at 96-102.) SSA scheduled the hearing for March 11, 2010, and again advised Freeman of his right to representation. (*Id.* at 106–12.)

A video hearing before ALJ Showalter was held on March 11, 2010, as scheduled. (*Id.* at 14, 165–94.) At the outset of the hearing, Freeman was again reminded of his right to legal representation. (*Id.* at 169-71.) Freeman proceeded *pro se*. (*Id.*)

On April 12, 2010, ALJ Showalter issued a decision finding that: (1) from March 2003 through November 2006, Freeman was overpaid DIB due to his resumed gainful employment; (2) Freeman was at fault for the overpayment; and (3) requiring Freeman to repay the benefits would neither defeat the purpose of Title II of the Social Security Act, nor be against equity and good conscience. (*Id.* at 14–18.) Citing 20 C.F.R. § 404.507, ALJ Showalter held that Freeman was at fault in causing the overpayment—despite his repeated efforts to notify SSA of his resumed work activity—because he should have known he was not entitled to keep and cash his monthly DIB checks. (*Id.* at 16–17.) Additionally, even assuming Freeman was without fault, ALJ Showalter held that, under 20 C.F.R. § 404.508, recovery of the overpayment would not defeat the purpose

5

of Title II because the combined income of Freeman and his wife substantially exceeded their ordinary and necessary living expenses. (*Id.* at 16–17.)

Freeman submitted a request to have the ALJ's decision reviewed by the Social Security Appeals Council on June 14, 2010, arguing that: (1) ALJ Showalter abused her discretion by omitting testimony from SSA claims representative Rebecca Calloway; (2) there was an error of law in the ALJ's calculation of the overpayment amount; and (3) the ALJ's conclusion that Freeman was at fault was not supported by substantial evidence. (*Id.* at 10, 158–160.) The Appeals Council denied the request for review on February 10, 2011, finding no reason to question the ALJ's decision. (*Id.* at 4–8.) Freeman timely filed this action, seeking review of the ALJ's April 12, 2010, decision. (D.I. 2 at 3.)

Freeman previously made two payments to SSA: $4560.00 on March 12, 2008, and $5150.00 on March 4, 2009. (*Id.* at 105.) Freeman's unpaid balance after these payments is $60,789.00. (*Id.*)

## III. STANDARD OF REIVEW

Pursuant to 20 C.F.R. §§ 404.955 and 404.981, upon the Appeals Council's denial of review, the ALJ's decision becomes the final decision of the Commissioner. *See Sims v. Apfel*, 530 U.S. 103, 106–07 (2000); *Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001). ALJ decisions are accorded a high degree of deference on review. *See* 42 U.S.C. § 405(g); *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999). If the Commissioner's final decision is supported by "substantial evidence," the decision is "conclusive" and a reviewing court must affirm it. 42 U.S.C. § 405(g); *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992); *see also Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, [the court is] bound by those findings, even if [it] would have

decided the factual issue differently."). Evidence is "substantial" if it amounts to "more than a mere scintilla," or if "a reasonable mind might accept [it] as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Thus, the substantial evidence standard may be satisfied, even if the ALJ's decision is supported by "somewhat less than a preponderance of evidence." *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005) (quoting *Ginsburg v. Richardson*, 436 F.2d 1146, 1148 (3d Cir. 1971)).

In determining whether substantial evidence supports the ALJ's decision, a reviewing court may not undertake *de novo* review, nor may it re-weigh the evidence of record. *Monsour Med. Ctr. v. Heckle*, 806 F.2d 1185, 1190 (3d Cir. 1986). Furthermore, a court must only look at the evidence that was actually presented to the ALJ in prior proceedings. *See Matthews*, 239 F.3d at 593–95 (3d Cir. 2001). "Overall, the substantial evidence standard is deferential and includes deference to inferences drawn from the facts if they, in turn, are supported by substantial evidence." *Schaudeck*, 181 F.3d at 431 (citing *Monsour*, 806 F.2d at 1190–91).

## IV. DISCUSSION

Freeman asserts that the ALJ's decision to deny a waiver of overpayment recovery was flawed because (1) he was not at fault for the overpayment and (2) recovery would be against equity and good conscience. (D.I. 13 at 5; D.I. 16 at 1-2.) He further argues that the Appeals Council violated his right to procedural due process by failing to address his objections to the ALJ's denial of his requested waiver. (D.I. 13 at 5; D.I. 16 at 1.)

### A. Applicable Statute and Law

The Social Security Act ("Act") requires the Commissioner to correctively adjust or recover overpayments to individuals in accordance with the administrative process set out in SSA

7

regulations.[2] 42 U.S.C. § 404(a)(1). The Act, however, further stipulates that certain overpaid individuals may qualify for a waiver of overpayment recovery, which absolves them from having to refund overpaid benefits. § 404(b); 20 C.F.R. § 404.506. A waiver of overpayment recovery can only be approved if: (1) the overpaid individual is without fault; and (2) adjustment or recovery of the overpayment would either (a) defeat the purpose of Title II of the Act, or (b) be against equity and good conscience. 42 U.S.C. § 404(b); 20 C.F.R. § 404.506. The individual seeking waiver bears the burden of proving that these conditions have been met. *See Lang v. Sullivan*, 762 F. Supp. 628, 631–32 (D.N.J. 1991) (citing *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1042–43 (2d Cir. 1984)), *aff'd sub nom. Lang v. Dep't of Health & Human Servs.*, 947 F.2d 936 (3d Cir. 1991).

## B. Fault

SSA guidelines explain:

> [W]hether an individual is at fault . . . depends upon whether the facts show that the incorrect payment to the individual . . . resulted from:
> - (a) An incorrect statement made by the individual which he knew or should have known to be incorrect; or
> - (b) Failure to furnish information which he knew or should have known to be material; or
> - (c) With respect to the overpaid individual only, acceptance of a payment which he either knew or could have been expected to know was incorrect.

---

[2] If SSA determines that an individual has erroneously received more benefits than he or she is due, it must first notify the individual of the overpayment and of his or her right to request a waiver. 20 C.F.R. §§ 404.502a, 416.558(a). The individual may then submit a request for a waiver of overpayment recovery. § 404.506. If the request cannot be approved after initial review, the individual is given an opportunity to have a personal conference with a claims representative and review the claims file. § 404.506(c)–(f). SSA then issues a written decision approving or denying the waiver request, and notifying the individual of his or her right to appeal. §404.506(g). If the waiver is denied, the individual may request a hearing before an ALJ. § 404.930(a)(6). Should the ALJ issue an adverse decision, the individual may request review by the Appeals Council. § 404.968. The Appeals Council, however, may deny the individual's request for review and, if it so chooses, is under no obligation to address the individual's contentions or explain the rationale for its decision. § 404.967; *see also Meyer v. Astrue*, 662 F.3d 700, 705–06 (4th Cir. 2011).

8

20 C.F.R. § 404.507. The degree to which SSA may have been concurrently at fault has no bearing on an overpaid individual's liability to repay; the Act is solely concerned with a binary determination of whether the individual was at fault. *Id.*; *see also Mehalshick v. Comm'r Soc. Sec.*, No. 14-1944, 2015 WL 1867496, at *2 (3d Cir. Apr. 24, 2015).

Freeman contends that he was not at fault in causing the overpayment because he promptly and repeatedly notified SSA of his resumed employment. (D.I. 16 at 1.) He argues that he reasonably relied on SSA's erroneous redeterminations of his benefit eligibility and that these redeterminations led him to reasonably believe that he was, in fact, still entitled to receive DIB "based on his wage earnings." (D.I. 16 at 2; D.I. 7 at 176–77.)

Freeman bears the burden of proving the ALJ's finding that he was at fault was not supported by substantial evidence. *See Lang*, 762 F. Supp. at 631–32. The court finds that Freeman cannot satisfy this burden. ALJ Showalter's finding—that Freeman was at fault because he knew or should have known that he was not entitled to keep and cash the monthly DIB checks—was supported by substantial evidence. Freeman's suggestion that SSA may also have been at fault due to a possible clerical error, is immaterial to the pertinent question for determining waiver eligibility: whether the claimant, Freeman, was "without fault." *See* 20 C.F.R. § 404.507; *see also Mehalshick*, 2015 WL 1867496, at *2. Here, Freeman has acknowledged that, when he returned to work full-time in March 2002, he was no longer disabled; he was earning at least $3395 per month; and he had no special needs relating to the performance of his employment. (D.I. 7 at 17, 115–20, 187.) ALJ Showalter cited evidence that Freeman promptly notified SSA upon his return to work, first by telephone and then by filing Work Activity Reports, suggesting he was at least somewhat aware that his return to work might impact his DIB eligibility. (D.I. 7 at 14, 17.) Additionally, ALJ Showalter cited one of the pamphlets that Freeman received in March 1995

9

explaining his obligation to report his work activity for purposes of adjusting or stopping benefits. (*Id.* at 17.) The pamphlet further suggests that Freeman knew or should have known that his return to full-time work rendered him ineligible for continued benefits. (*Id.* at 17.)

The evidence examined by ALJ Showalter shows that Freeman knew he was receiving DIB to assist him while his disability prevented him from working. (*Id.* at 176.) It further shows Freeman was aware that he was obligated to report his return to work and that, upon such return, "there was no assistance needed." (*Id.* at 176, 185–86.) This evidence, coupled with the pamphlets and correspondence received from SSA, is sufficient for a reasonable mind to conclude that Freeman should have realized that he was not entitled to keep the benefits after he resumed full-time work. (*Id.* at 17.)

Accordingly, the court finds the ALJ's conclusion that Freeman was "not without fault" and therefore not entitled to a waiver was supported by substantial evidence and was not legally deficient. *See Mehalshick*, 2015 WL 1867496, at *2.

### C. Purpose of Title II and Equitable Considerations

Because the ALJ's finding that Freeman was at fault is supported by substantial evidence, the court need not address the issue of whether recovery of the overpayment would defeat the purpose of Title II or be against equity and good conscience. *See* 42 U.S.C. § 404(b); *Mehalshick*, 2015 WL 1867496, at *2 n.3 (citing *Garnett v. Sullivan*, 905 F.2d 778, 782 (4th Cir. 1990)). Even if the evidence showed that Freeman was without fault, however, the findings of ALJ Showalter and the Appeals Council with respect to this second prong of the waiver eligibility test are also supported by substantial evidence.

Freeman argued in his waiver request that recovering the overpayment would defeat the purpose of Title II because he could not afford to refund the overpayment. (D.I. 7 at 19–26.)

10

Whether recovering the overpayment would defeat the purpose of Title II of the Act depends upon whether the overpaid individual would be deprived of income "required for ordinary and necessary living expenses." 20 C.F.R. § 404.508. Here, however, according to evidence presented to the ALJ, the gross combined household income of Freeman and his wife exceeded their documented expenses by at least $200 per month, which could be repaid to SSA. (D.I. 7 at 17, 52–72, 73–74, 75–82, 84–85.) Further, the ALJ reasonably concluded that Freeman continued to work and had means to repay the overpayment gradually by making monthly payments. (*Id.* at 17, 84–85, 145.) Thus, the ALJ's finding that recovering the overpayment would not defeat the purpose of Title II was supported by substantial evidence.

Freeman also contends that recovering the overpayment would be against equity and good conscience. (D.I. 13 at 5.) This question depends upon whether, upon a notice that a payment would be made or because of the overpayment itself, the overpaid individual (1) changed his or her position for the worse or (2) relinquished a valuable right. 20 C.F.R. § 404.509. "[T]he change of position may be quite minor, as long as it involves an expenditure which would not have been made but for the incorrect benefit payment." *Cucuzzella v. Weinberger*, 395 F. Supp. 1288, 1298 (D. Del. 1975). The court agrees with the Appeals Council's determination that there was no indication that Freeman changed his position for the worse or relinquished a valuable right as a result of the overpayment. (D.I. 7 at 6.) The court is constrained to look only at the evidence that was presented during the SSA administrative process, and such evidence fails to demonstrate detrimental reliance. *See Matthews*, 239 F.3d at 593-95. Thus, the Appeals Council's finding that recovering the overpayment would not be against equity and good conscience was supported by substantial evidence.

11

### D. Procedural Due Process

Freeman's final argument is that the Appeals Council violated his procedural due process rights by failing to address his contention that the ALJ misapplied 20 C.F.R. §§ 404.510a and 404.512. (D.I. 13 at 5; D.I. 16 at 1–2.) The court rejects this argument.

The Appeals Council may deny an overpaid individual's request for review of an adverse ALJ decision without addressing the individual's contentions or explaining the rationale for its decision. *See* 20 C.F.R. § 404.967; *see also Meyer*, 662 F.3d at 705–06. Moreover, the regulations Freeman cites were not impermissibly ignored or misapplied. Under 20 C.F.R. § 404.510a, an overpaid individual who accepts overpayment due to reliance on "erroneous information from an official source within [SSA] . . . with respect to the *interpretation* of a pertinent provision of the Social Security Act or regulations pertaining thereto" is without fault. 20 C.F.R. § 404.510a (emphasis added). Here, SSA made an erroneous determination that Freeman was eligible for continuing DIB, failing to properly *apply* provisions of the Act. But SSA did not *misinterpret* a provision of the Act, causing Freeman to accept the overpayment. Because the situation described under 20 C.F.R. § 404.510a did not arise here, 20 C.F.R. § 404.512 is also not applicable. As such, there was no due process violation.

### V. CONCLUSION

The findings of ALJ Showalter and the Appeals Council were supported by evidence that "a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 F.2d at 401. Thus, the court grants the Commissioner's motion for summary judgment (D.I. 14) and denies Freeman's motion for summary judgment. (D.I. 13.)

Dated: June 16, 2015

UNITED STATES DISTRICT JUDGE